IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. **12-cv-00925-JLK**

**KATIE FALK,**

    Plaintiff,

v.

**CITY OF GLENDALE,**

    Defendant.

---

MEMORANDUM OPINION AND ORDER

---

**Kane, J.**

This matter is currently before me on Defendant's Motion to Dismiss (doc. 5), in which Defendant moves to dismiss Plaintiff's complaint (doc. 1) with prejudice pursuant to Fed.R.Civ.P. 12(b)(6). Having reviewed the parties' submissions, I find that Plaintiff fails to state a claim upon which relief can be granted. Therefore, Defendant's Motion to Dismiss is GRANTED IN PART and Plaintiff's complaint is DISMISSED WITHOUT PREJUDICE**.**

**FACTS**[1]

Plaintiff Katie Falk was employed by the City of Glendale Police Department as a 911 dispatcher. Compl. (doc. 1) at ¶ 13 . Plaintiff held this position from approximately June 2, 2008

---

[1] When evaluating the sufficiency of a pleading, I accept Plaintiff's factual allegations, as distinguished from legal conclusions, as true. *See, e.g., Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 886 (10th Cir. 2011). Accordingly, these facts are drawn exclusively from Plaintiff's Complaint (doc. 1).

to approximately November 29, 2010. Id. at ¶ 15. Plaintiff had no negative employment history before her termination. Id. at ¶ 14. The job was demanding. Id. at ¶ 17. During some shifts, Plaintiff was unable to take breaks and was even required to answer calls while using the restroom. Id. at ¶ 17.

During the course of her employment, Plaintiff became pregnant and gave birth to a child. Compl. ¶¶ 16–17. After taking her maternity leave, she returned to work on September 16, 2010. Id. at ¶ 18. Upon her return, Plaintiff requested a space and break time so that she could pump breast milk. Id. at ¶ 18. She was not provided with a private space and soon discovered that understaffing limited her ability to take breaks. Id. at ¶ 18.

Nine times, Plaintiff informed her supervisors of her difficulties. Compl. ¶ 19. Her dispatch supervisor informed Plaintiff that patrol officers would cover for Plaintiff during breaks, but patrol officers and sergeants refused to do so. Id. at ¶ 19. Plaintiff reported the officers' unresponsiveness to her dispatch supervisor, who then reported it to an individual identified as Chief Ross.[2] Id. at ¶ 19. Chief Ross informed Plaintiff that officers would provide her with two breaks per shift; Plaintiff, however, remained unable to obtain breaks. Id. at ¶ 19. Because of this, she experienced discomfort and often had to work in a soiled bra after expressing milk on herself. Id. at ¶¶ 20, 23. This led to three separate breast infections. Id. at ¶ 20.

Plaintiff's ongoing requests for accommodations provoked hostility from Sgt. Crystal Johnson. Compl. ¶¶ 21, 27. Johnson prohibited dispatch-trained officers from relieving Plaintiff,

---

[2] Although not specifically identified anywhere in the brief, I presume that "Chief Ross" refers to Glendale Chief of Police Victor Ross. *About Us*, Glendale Police Department, http://www.glendale.co.us/departments/pd/about.htm (last accessed June 12, 2012).

sending untrained officers instead. Id. at ¶ 26. As a result, Plaintiff was frequently interrupted with questions and could not effectively express milk. Id. at ¶ 26. Johnson prohibited Plaintiff from directly requesting patrol officers for relief. Id. at ¶ 25.

On November 28th, 2010, Plaintiff notified Johnson three times that she needed a break, that she was experiencing discomfort, and that she had expressed milk on herself. Compl. ¶ 27. Johnson "laughed, made a 'moo' noise, and walked away." Id. at ¶ 27. Johnson then took a fifteen minute break. Id. at ¶ 27. Upon returning, she continued to ignore Plaintiff, intentionally forcing Plaintiff to wait so as to make an example out of her. Id. at ¶27.

Plaintiff continued to complain about her difficulties obtaining breaks as well as about Johnson's hostile behavior. Compl. ¶ 21. The only response Plaintiff received was an e-mail stating that "the department could not accommodate her needs." Id. at ¶ 21. Her December and January shifts were revoked. Id. at ¶ 21. Plaintiff called Human Resources Director Polly McNeil, who confirmed that Plaintiff would not be scheduled for any hours until she weaned her daughter. Id. at ¶ 21. An offer was made to give Plaintiff some December hours, but no further action was taken with respect to the harassment. Id. at ¶ 21. Plaintiff's personal items, work ID, and lockers were reassigned. Id. at ¶ 22. Work acquaintances informed her that she was "no longer welcome at Glendale." Id. at ¶ 22.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission (E.E.O.C.). Compl. ¶ 8. On March 12, 2012, Plaintiff received a Notice of Right to Sue from the Civil Rights Division of the United States Department of Justice. Compl. ¶ 9. Plaintiff filed suit in this court on April 6, 2012, bringing four claims under Title VII: pregnancy discrimination, gender discrimination, gender discrimination based on hostile work environment, and retaliation (doc. 1).

In lieu of a response, Defendant submitted a motion to dismiss (doc. 5) pursuant to Fed.R.Civ.P. 12(b)(6).

**STANDARD OF REVIEW**

Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In order to survive a Fed.R.Civ.P. 12(b)(6) motion to dismiss, a pleading must include sufficient factual allegations to state a plausible claim to relief. *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

Plausibility, in this sense, relates to the specificity of the allegations in the complaint; they must not be "so general that they encompass a wide swath of conduct, much of it innocent." *Khalik*, 671 F.3d at 1191 (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). No specific facts are required, *Khalik*, 671 F.3d at 1192, but the complaint must have sufficient factual assertions "to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555. The "nature and specificity of the allegations" necessary to satisfy the plausible claim standard depends on the context of the claim.[3] *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011).

---

[3] *Kansas Penn Gaming* dealt with a claim filed against a county and several of its commissioners. *Kansas Penn*, 656 F.3d at 1220. The court noted that in that context, the *Twombly* standard might be applied more stringently because, owing to the complexity of the case, it was crucial "that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id.* at 1215 (quoting

## DISCUSSION[4]

*First and Second Claims for Relief: Pregnancy and Gender Discrimination*[5]

Title VII prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1) (1964). Discrimination can be shown by direct evidence or through the burden-shifting process established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The first step in the *McDonnell Douglas* framework requires the plaintiff to establish a prima facie case of discrimination by showing (1) that she belongs to a protected class; (2) that she was the victim of an adverse employment action; (3) that she was qualified for her job; and (4) that she was treated less favorably than similarly situated co-workers who did not belong to the protected class. *Khalik*, 671 F.3d at 1193. A plaintiff is not required to make out all elements of a prima facie

---

*Robbins*, 519 F.3d at 1250). Fraud cases, which require heightened pleading under Fed.R.Civ.P. 9(b), represent another instance of pleading requirements changing to fit the specifics of a case. While these examples illustrate a few different scenarios in which context impacts Fed.R.Civ.P. 12(b)(6) analysis, the exact mechanics by which a pleading standard should be adjusted to suit the context of a claim remain somewhat unclear. Should the Tenth Circuit choose to revisit this issue, further elaboration would surely prove helpful.

[4]   Plaintiff's complaint (doc. 1) and response brief (doc. 6) are riddled with drafting errors. For instance, Plaintiff's counsel refers to his client by the wrong surname. Compl. ¶ 12 (stating "Untisz was employed" by the Glendale Police Department); Pl.'s Resp. ¶ 20 (referring to Plaintiff as "Fejes," the plaintiff in the case upon which Defendant has based its motion to dismiss). Plaintiff's complaint also struggles with correct pronoun usage, which generates jarring and out-of-place shifts from third- to first-person perspective. *See, e.g.*, Compl. ¶ 24 (referring to Plaintiff's child as "my child"). The sloppy drafting, however, does not constitute grounds for dismissal. These drafting mistakes, however, are symptomatic of the much more problematic substantive flaws addressed *infra*.

[5]   The Pregnancy Discrimination Act simply adds pregnancy-related discrimination to Title VII's definition of gender discrimination. A pregnancy discrimination claim <u>is</u> a gender discrimination claim. As such, I analyze the pregnancy discrimination claim and the gender discrimination claim as a single claim. *See, e.g.*, *Stanley v. Abacus Tech. Corp.*, 359 Fed. App'x 926, 931 (10th Cir. 2010).

case in order to survive a 12(b)(6) motion, but considering the elements required to succeed on each claim assists in determining whether a plausible claim to relief exists. *Id*. at 1194.

*A. Title VII Protected Class Status*

In 1976, a little over ten years after the passage of the Civil Rights Act of 1964, the Supreme Court held that pregnancy-related discrimination was not gender discrimination as prohibited by Title VII of the Act. *General Electric Co. v. Gilbert*, 429 U.S. 125, 145-146 (1976). The Court relied on the logic that even though the defendant's benefits plan did not cover pregnancy, male and female employees were eligible for the same benefits, and so no discrimination existed. *Id.* at 135-136. The decision was not unanimous; Justices Brennan, Marshall, and Stevens dissented, with Justice Stevens noting that "by definition, [pregnancy discrimination] . . . discriminates on account of sex; for it is the capacity to become pregnant which primarily differentiates the female from the male." *Id.* at 162 (Stevens, J., dissenting). In response to this decision, Congress passed the Pregnancy Discrimination Act of 1978 ("PDA"), which extended Title VII's gender discrimination prohibition to include any discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." Pregnancy Discrimination Act of 1978, 42 U.S.C. §2000e(k) (1978). The Supreme Court subsequently recognized the PDA as a repudiation of the *Gilbert* decision. *See, e.g., Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.*, 462 U.S. 669, 678 (1983).

The language of the PDA focuses solely on the conditions experienced by the mother.[6]

---

[6] Efforts have been made to amend the PDA to explicitly include breastfeeding as a "related medical condition." Most recently, Rep. Carolyn B. Maloney (D - NY) introduced the Breastfeeding Promotion Act of 2011, H.R. 2758, 112th Cong. §§ 101(a)(8)-(b)(2), which states that Congress originally intended to include breastfeeding, that some courts have misunderstood Congress' intent by excluding breastfeeding, and that the PDA shall hereinafter be interpreted to include "breastfeeding and expressing breast milk in the workplace."

While lactation is not *per se* excluded, Title VII does not extend to breast-feeding as a child care concern. *Fejes v. Gilpin Ventures, Inc.*, 960 F. Supp. 1487, 1492 (D. Colo. 1997); *see also, e.g., Wallace v. Pyro Mining Co.*, 789 F. Supp. 867, 869 (W.D. Ky. 1990), *aff'd*, 951 F.2d 351 (6th Cir. 1991).[7] Since the complaint asserts that Plaintiff's desire to "continue to breast feed her infant

---

[7] A brief overview of the current law surrounding lactation, employment, and the PDA may prove enlightening, as recent cases involving these matters seem a bit confused. Earlier cases centered on the issue of an employee's desire to breastfeed her child. *See, e.g., Fejes*, 960 F. Supp. at 1492; *Wallace*, 789 F. Supp. 867, 869 (W.D. Ky. 1990), *aff'd,* 951 F.2d 351 (6th Cir. 1991); *Barrash v. Bowen*, 846 F.2d 927. Such concerns are not within the language of the PDA, as the PDA "only provides protection based on the condition of the mother." *Fejes*, 960 F. Supp. at 1492. When, as in *Fejes* and *Wallace*, a plaintiff claims discrimination after being terminated for not returning to work because of a desire to stay at home to breastfeed, her claim will not prevail. *Fejes*, 960 F. Supp. at 1492; *Wallace*, 789 F. Supp. at 869.

A second scattering of cases, the majority of which remain unreported, address lactation and breast-pumping directly; however, the logic applied does not comport with the language of the PDA or the pre-existing jurisprudence on the issue.

*Martinez v. N.B.C., Inc.* directly addresses and declines to extend Title VII protection to breast pumping in the workplace. 49 F. Supp. 2d 305 (S.D.N.Y. 1999). Yet in order to do so, the *Martinez* court relied heavily on *Gilbert*, the case that originally excluded pregnancy discrimination from Title VII. *Gilbert*, 429 U.S. at 145-146. As the Supreme Court acknowledged in *Newport News*, Congress, via the PDA, "unambiguously expressed its disapproval of both the holding and the reasoning of the Court in the *Gilbert* decision." *Newport News*, 462 U.S. at 678. The PDA explicitly and purposefully contradicts and supersedes *Gilbert*. As such, the logic of *Gilbert* cannot apply to claims involving "related medical conditions" protected by the PDA.

A few other courts have also ruled against extending PDA protection to lactation concerns. *Jacobson v. Regent Assisted Living, Inc.*, No. CV—98—564—ST, 1999 WL 37390, at *11 (D. Or. 1999); *E.E.O.C. v. Houston Funding II, LTD.*, 114 Fair Empl. Prac. Cas. (BNA) 799 (S.D. Tex. 2012) (holding that "[f]iring someone because of lactation or breast-pumping is not sex discrimination."). These rulings, however, misapply *Wallace*, citing that case to support their conclusions. In doing so, they fail to recognize that the breast-feeding in *Wallace* dealt with the condition of the child, while the claims in the cases before them dealt with physiological conditions experienced by the mother.

As it stands, no existing case law correctly excludes lactation or other conditions experienced by the mother as a result of breast-feeding from Title VII protection under the

daughter" formed the basis for the alleged discrimination, her protected status is not established. Compl. ¶¶ 32, 35. Consequently, Plaintiff does not state a claim for relief as a member of a protected class.

### *B. Discrimination*

The Pregnancy Discrimination Act does not require any affirmative accommodations; it simply prohibits employers from treating pregnancy-related conditions "less favorably than other medical conditions." *Newport News*, 462 U.S. at 684; *see also Cal. Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 284-86 (1987). Plaintiff must show that, as a member of a protected class, she was treated differently than other co-workers not belonging to the same class. *Khalik*, 671 F.3d at 1193. Even if Plaintiff had successfully alleged protected status, she still alleges no instances of discrimination.

It is possible that discrimination could be shown in a case involving lactation. If lactation is a natural consequence of pregnancy, then expressing milk is equivalent to any other involuntary bodily function. Therefore, if other coworkers were allowed to take breaks to use the restroom while lactating mothers were banned from pumping, discrimination might exist.

Plaintiff's complaint, however, does not allege that her non-lactating coworkers were treated more favorably. In fact, Plaintiff's complaint states that, before her pregnancy, Plaintiff "often had to use the restroom while answering radio traffic." Compl. ¶17. As Plaintiff was previously not granted breaks to use the restroom, it was not discriminatory to subsequently deny her breaks to

---

PDA. A plaintiff could potentially succeed on a claim if she alleged and was able to prove that lactation was a medical condition related to pregnancy, and that this condition, and not a desire to breastfeed, was the reason for the discriminatory action(s) that she suffered.

pump. This, then, appears to be a case about workplace conditions,[8] and not about discrimination.[9]

Plaintiff's complaint does not allege sufficient facts to create a plausible inference of Title VII discrimination and must be dismissed.

*Third Claim for Relief: Hostile Workplace*

In order to establish a hostile work environment claim based on sex discrimination, a plaintiff must demonstrate that she was a victim of sex discrimination, and that the discrimination created an "abusive working environment" and impacted the terms of her employment. *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1058 (10th Cir. 2009). Isolated incidents of rudeness or other "ordinary tribulations of the workplace" are not sufficient to establish such an environment under Title VII. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *Gunnel v. Utah Valley State Coll.*, 152 F.3d 1253, 1265 (10th Cir. 1998).

As previously discussed, Plaintiff has not alleged sufficient facts to suggest that she was a victim of sex discrimination. Additionally, Plaintiff's hostile work environment claim rests primarily on a series of unpleasant interactions with Sgt. Johnson. Only one specific incident is cited. Plaintiff's allegations do not imply the level of severity required to establish a hostile workplace claim. *Faragher*, 524 U.S. at 778. Unpleasant or negative interactions with a co-worker

---

[8] The Fair Labor Standards Act ("FLSA") requires employers to provide time and space for nursing mothers to express milk for one year after the child's birth. 29 U.S.C. §207(r) (2010). Plaintiff has yet to consider whether this body of law would support her claim.

[9] There is also the possibility of a direct discrimination claim. If Plaintiff establishes that lactating mothers are a protected class, and her supervisor explicitly told her that the reason for lost shifts was her condition, then she may be able to assert a direct discrimination claim. Once again, the reasons for the discrimination would need to be pled in a way that invokes the protection of the PDA, as opposed to the current claim that Plaintiff was discriminated against because she wished to breastfeed her daughter.

are "ordinary tribulations" that are inherent when a large number of different personalities interact in an employment context. Having trouble obtaining a break in this particular position is also an ordinary tribulation that, by her own admission, Plaintiff often faced before her pregnancy. Compl. ¶ 17. As such, Plaintiff does not state a claim to relief for sex discrimination based on a hostile work environment.

*Fourth Claim for Relief: Retaliation*

To succeed on a Title VII retaliation claim, Plaintiff must plead and prove (1) that she opposed some form of discrimination prohibited by Title VII, (2) that she was subject to adverse employment action, and (3) that a causal connection existed between the opposition and the adverse action. *Khalik*, 671 F.3d at 1193. Plaintiff does not have to show that the policies she opposed constituted actual discrimination, but rather that she acted on a reasonable good-faith belief that the policies she opposed violated Title VII. *Crumpacker v. Kan. Dep't of Human Res.*, 338 F.3d 1163, 1171 (10th Cir. 2003).

Here, Plaintiff alleges that she complained numerous times about Defendant's failure to provide her with breaks to express milk, that she lost her December and January shifts, and that this revocation was in direct response to her complaints. This is sufficient to imply opposition, adverse employment action, and a causal link between the two.[10] Plaintiff fails to allege, however, that she believed her complaints were in opposition to the type of discrimination prohibited by Title VII. Instead, during her employment, Plaintiff repeatedly cited "[f]ederal labor law" as a way of

---

[10]  An adverse employment action is one so severe as to "constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1222 (10th Cir. 2006).

encouraging her supervisors to accommodate her needs.[11] Compl. ¶¶ 18, 21. Since Plaintiff does not allege that her opposition was premised on a good-faith belief that she was the victim of Title VII discrimination, Plaintiff's complaint fails to state a claim for relief for retaliation.

## CONCLUSION

Plaintiff's complaint does not state any claim upon which relief may be granted. Accordingly, Defendant's motion to dismiss is GRANTED IN PART and Plaintiff's complaint is DISMISSED WITHOUT PREJUDICE.

Dated:  June 25, 2012                    BY THE COURT:

**/s/ John L. Kane**
Senior U.S. District Court Judge

---

[11]   If Plaintiff's opposition centered not on discrimination, but on workplace conditions, then she must consider whether an FLSA retaliation claim provides an appropriate remedy. 29 U.S.C. § 218c (2010).